IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2022 Session

**SHARON TOOMES v. D & S MOTORS ET AL.**

**Appeal from the Circuit Court for Lauderdale County**
**No. 7196      A. Blake Neill, Judge**
_____

**No. W2022-00244-COA-R3-CV**
_____

Pro se appellant appeals the judgment rendered in favor of the defendant following a bench trial. Because we conclude that Appellant has waived all arguments by failing to file a substantially compliant brief or a transcript or statement of the evidence, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Sharon Toomes, Ripley, Tennessee, Pro se.

Jason R. Creasy, Dyersburg, Tennessee, for the appellees, D&S Motors, and David Peevyhouse.

**MEMORANDUM OPINION[1]**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On or about April 15, 2021, Plaintiff/Appellant Sharon Toomes ("Appellant") filed

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

a pro se affidavit of complaint against Defendant/Appellee D&S Motors/David Peevyhouse ("Appellee") in the Lauderdale County General Sessions Court. Judgment was rendered in favor of Appellant in the amount of $7,400.00 on May 4, 2021. Appellee appealed to the Lauderdale County Circuit Court ("the trial court") on May 6, 2021.

Counsel thereafter filed a notice of appearance on behalf of Appellant in the trial court. On July 9, 2021, Appellee filed a counter-claim against Appellant alleging that Appellant purchased a used car from Appellee under an installment contract and that $6,243.73 was still owed on the contract. Appellee therefore asked that any monies awarded to Appellant be offset by this amount.

On July 16, 2021, by and through counsel, Appellant filed a formal complaint against Appellee. Therein, she alleged that Appellee had wrongfully repossessed her vehicle, despite her timely payments on the installment contract. Appellant's complaint raised claims for declaratory judgment, breach of contract, unjust enrichment, conversion, and negligent misrepresentation and requested that she be awarded compensatory and punitive damages. On the same day, Appellant filed a motion to dismiss Appellee's counter-claim.

In January and February of 2022, the parties submitted trial briefs to the trial court. Also in February 2022, Appellee answered Appellant's complaint, denying the material allegations therein.

A bench trial took place on February 25, 2022.[2] On February 28, 2022, Appellant filed a pro se notice of appeal, although no final judgment had yet been rendered.[3] The final judgment was eventually entered on March 21, 2022. Therein, the trial court made detailed findings of fact as to what transpired with Appellant's vehicle following its purchase from Appellee:

> 5. [Appellant] testified that sometime in March 2021 her Ford Explorer was vandalized. At first, all [Appellant] noticed was that the vehicle was keyed. But a week or so after the vandalism, [Appellant] began to have engine problems. As a result, she had the vehicle towed to Connell's Body Shop in Ripley, Tennessee.
> 6. [Appellant] testified she knew Connell's did not have a mechanic, but she was only interested in fixing the damage to the body of the Explorer at that time.
> 7. [Appellant] testified, along with the insurance adjuster from [Appellant's]

---

[2] It is unclear if Appellant was represented by counsel at the bench trial, particularly as no transcript or statement of the evidence is included in the record on appeal, as discussed *infra*.

[3] Following February 28, 2022, it appears that Appellant continued to be self-represented, including throughout this appeal.

automobile insurance company, that [Appellant] contacted her insurance company about fixing the body damage to the vehicle. The insurance adjuster also testified he told [Appellant] if the engine problems were a result of the vandalism, then her insurance would cover the repairs, but if the engine problems were simply mechanical problems, then [Appellant] would be responsible for the repairs herself.

8. The adjuster testified that when a representative from Connell's told him the body shop did not have a mechanic, that he spoke with [Appellant] about moving the vehicle to a mechanic to have the engine inspected and that [Appellant] agreed with this. [Appellant] denied that this conversation occurred.

9. Defendant [Mr.] Peevyhouse testified that he received a call from Connell's asking him to come and get the vehicle to inspect the engine to determine the problem. [Mr.] Peevyhouse said he also spoke to [Appellant's] insurance adjuster about inspecting the vehicle, so he towed the vehicle free of charge to his shop to have a mechanic inspect the vehicle. [Mr. Peevyhouse] testified that he believed both the insurance adjuster and the body shop were acting on behalf of [Appellant] when they asked him to take the vehicle and inspect it. The court credits this testimony as truthful.

10. [Appellee's] mechanic testified that he inspected [Appellant's] vehicle and determined that someone had put sugar in the gas tank, ruining the engine. [Appellee] and his mechanic admitted they took no pictures of the engine or prepared a written diagnostic check of the engine. While [Appellant] argued this was a reason to doubt the true condition of the vehicle, [Appellant] offered no reason as to why [Mr. Peevyhouse] or his mechanic would lie about the condition of the vehicle. Furthermore, [Appellant] testified she did not take any independent steps to determine the condition of the vehicle after her insurance company towed it from [Appellee's] property.

11. After determining the cause of the engine damage, [Appellee] contacted [Appellant's] insurance adjuster and told him about the sugar in the tank. The insurance adjuster testified that he determined the damage to the vehicle to be $7,976.64, which was a total loss due to the value of the vehicle.

12. The insurance adjuster testified he contacted [Appellant] and informed her of the damage to the vehicle. Both [Appellant] and the insurance adjuster testified that [Appellant] originally wanted to keep the vehicle and have her father repair the motor, but the adjuster eventually convinced her to have the vehicle totaled and allow the insurance company to pay off the balance owed to [Appellee] and send her a check for the difference. After this conversation, the insurance adjuster told [Appellee] that the vehicle would be totaled, and the insurance adjuster, not [Appellee], had the vehicle towed from [Appellee's] shop to a storage facility in Memphis, Tennessee.

13. Both [Appellant] and the insurance adjuster testified that a few days after

[Appellant] agreed to total the vehicle, she called the adjuster back and said she wanted to keep the vehicle. The adjuster testified he told [Appellant] she could pay to have the vehicle towed back to a place of her choice from Memphis, but [Appellant] denied this conversation happened. Either way, it was uncontroverted that the insurance company had the vehicle towed from [Appellee's] property and, therefore, the insurance company, not [Appellee] retained control of [Appellant's] vehicle. Furthermore, the insurance adjuster testified that [Appellant] has made no attempts to retrieve the vehicle since the insurance company towed it to Memphis.

14. [Mr. Peevyhouse] testified that at the time all of this occurred, [Appellant] still owed $6,243.73 on the vehicle.

Based on these findings, the trial court concluded that Appellee "never breached the installment agreement because [Appellee] did not repossess the vehicle." As such, the trial court ruled that Appellant was still obligated to pay the remaining balance of $6,243.73 on the installment contract and rendered a judgment in favor of Appellee as to that amount.

## II. DISCUSSION

As an initial matter, we note that Appellant is proceeding pro se in this appeal. As such, we keep the following principles in mind:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.
>
> The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.
>
> Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903–04 (Tenn. Ct. App. 2003) (citation omitted).

Rather than address the correctness of the trial court's ruling, we must first discuss the state of Appellant's brief and the record on appeal. Rule 27(a) of the Tennessee Rules of Appellate Procedure mandates that the appellant's brief contain various requirements that should be set forth under "appropriate headings." Among these requirements is "[a] statement of the issues presented for review[,]" Tenn. R. App. P. 27(a)(4). Subject to some exceptions not present here, "[r]eview generally will extend only to those issues presented for review." Tenn. R. App. P. 13(b). It is therefore well-settled that an issue is generally waived when it is argued in the body of the brief, but not designated as an issue on appeal. *See, e.g.*, **State v. Freeman**, 402 S.W.3d 643, 653 (Tenn. Ct. App. Oct. 16, 2012) ("Generally, an issue argued in the body of the brief, but not designated as an issue will be considered waived"); **Bunch v. Bunch**, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008); **Childress v. Union Realty Co.**, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002). Indeed, the Tennessee Supreme Court has opined that "a properly framed issue may be the most important part of an appellate brief." **Hodge v. Craig**, 382 S.W.3d 325, 335 (Tenn. 2012) (citing Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* 83 (2008); David E. Sorkin, *Make Issue Statements Work for You*, 83 Ill. B.J. 39, 39 (Jan. 1995)). Unfortunately, Appellant's brief contains no issue of any kind for this Court to review, properly framed or otherwise. Thus, the most important part of Appellant's brief is omitted.

But that is not the only omission in this case. Indeed, Appellant's brief fails to include essentially any of the hallmarks of a brief, including a table of contents, a table of authorities, a statement of facts, a statement of the case, an argument containing references to the record or citations to authority, a statement of the standard of review, or a conclusion. *See generally* Tenn. R. App. P. 27(a) (detailing the requirements); *see also* Tenn. R. App. Ct. 6 (stating that appellant's briefs should contain written argument with, *inter alia*, citations to the record). We have previously held on numerous occasions that the failure to substantially comply with Rule 27 constitutes a waiver of the issues an appellant raises on appeal and, consequently, is grounds for affirming a trial court's judgment. *See, e.g.*, **Breeden v. Garland**, No. E2020-00629-COA-R3-CV, 2020 WL 6285300, at *1 (Tenn. Ct. App. Oct. 27, 2020) ("The appellant's brief significantly fails to comply with Tennessee Rule of Appellate Procedure 27. Accordingly, we find that any issues on appeal are waived . . . ."); **Masserano v. Masserano**, No. W2018-01592-COA-R3-CV, 2019 WL 2207476, at *5 (Tenn. Ct. App. May 22, 2019) (affirming a trial court's findings when the appellant waived his issues on appeal by not complying with Rule 27); **Rummage v. Rummage**, No. M2016-02356-COA-R3-CV, 2018 WL 2134018, at *4 (Tenn. Ct. App. May 9, 2018) (footnote and citations omitted) ("Because of Father's failure to comply with the requirements of Rule 27(a) of the Tennessee Rules of Appellate Procedure and Rule 6 of the Rules of the Court of Appeals of Tennessee, Father has waived the issues he raises on appeal, and we have no choice but to affirm the trial court's judgment in all respects."); **Bean v. Bean**, 40 S.W.3d 52, 54–55 (Tenn. Ct. App. 2000) (citation omitted) ("[T]he Supreme Court has held that it will not find this Court in error for not considering

a case on its merits where the plaintiff did not comply with the rules of this Court.").

Although we are mindful of Appellant's pro se status in this Court, we cannot shift the burden of litigating this case to either the courts or Appellee. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). As such, even "[i]n considering appeals from pro se litigants, the court cannot write the litigants' briefs for them, create arguments, or 'dig through the record in an attempt to discover arguments or issues that [they] may have made had they been represented by counsel.'" *Cannistra v. Brown*, No. M2021-00833-COA-R3-CV, 2022 WL 4461772, at *4 (Tenn. Ct. App. Sept. 26, 2022). (quoting *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014)). As a result, the requirement that an appellant's brief substantially comply with Rule 27(a) is applicable to both represented parties and pro se parties. *See, e.g.*, *Murray*, 457 S.W.3d at 404 (waiving the pro se appellants' issue when they "failed to comply in any significant way with Tenn. R. App. P. 27."). Respectfully, Appellant's brief does not comply with Rule 27(a) in either letter or spirit.

Finally, we note that despite this case being resolved via bench trial, the record on appeal contains neither a transcript nor a statement of the evidence as required by Rule 24 of the Tennessee Rules of Appellate Procedure. *See generally* Tenn. R. App. P. 24(b) (governing transcripts); (c) (governing statements of the evidence). "Where the issues raised go to the evidence, there must be a transcript. . . . This rule likewise applies where there is a statement of the evidence which is incomplete." *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). "The appellant's duty includes the burden of providing to this Court a transcript or statement of the evidence from which we can determine whether the trial court erred." *Lewis v. Williams*, No. W2015-00150-COA-R3-CV, 2015 WL 9946271, at *4 (Tenn. Ct. App. Aug. 6, 2015). "In the absence of a transcript or statement of the evidence, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct." *Id.* Therefore, we must presume that the trial court's findings here are supported by the evidence. Given Appellant's failure to substantially comply with Rule 27, as discussed *supra,* and the lack of a transcript or statement of evidence against which we can evaluate the trial court's factual findings, we conclude that the trial court's judgment must be affirmed.

### III. Conclusion

The judgment of the Lauderdale County Circuit Court is affirmed, and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant, Sharon Toomes, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE