IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 29, 2023 Session

## MIDFIRST BANK v. TAMIKA L. COLE, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-21-1481     Jim Kyle, Chancellor**
_____

**No. W2023-00440-COA-R3-CV**
_____

Appellant appeals the dismissal of his claims related to foreclosed property, asserting that he was the true, legal, and lawful owner of the property. Because of serious deficiencies in Appellant's brief, we conclude that Appellant has waived his issues on appeal. The trial court's judgment is therefore affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Derrick Whitsy, Jr., Memphis, Tennessee, Pro se.

H. Keith Morrison, Fayetteville, Arkansas, and Joel W. Giddens, Memphis, Tennessee, for the appellee, MidFirst Bank,

Richard J. Myers, Memphis, Tennessee, for the appellees, Belgravia Square, LLC, and RA Oak Line, LLC.

## MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTUAL AND PROCEDURAL BACKGROUND[2]

This action began on October 26, 2021, when Plaintiff/Appellee MidFirst Bank ("MidFirst") filed a complaint to interplead funds and to determine distribution in the Shelby County Chancery Court ("the trial court"). MidFirst alleged that on July 20, 2005, Defendant Tamika L. Cole, the original debtor, "executed and delivered a Deed of Trust in favor of Realty Title, as Trustee for Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for First Horizon Home Loan Corporation D/B/A First Tennessee Home Loans, its successors and assigns, conveying certain real property" located in Memphis, Tennessee ("the Property"). According to MidFirst, the Deed of Trust was recorded in Shelby County, Tennessee, and all claims, rights, title and interest in the Deed of Trust were subsequently assigned to MidFirst.

According to the complaint, on September 30, 2021, a foreclosure sale was conducted on behalf of MidFirst. The Property was sold to a third-party purchaser, Defendant/Appellee Belgravia Square, LLC ("Belgravia Square"), which subsequently transferred the property via quitclaim deed to Defendant/Appellee RA Oak Line, LLC ("RA Oak Line" and collectively with MidFirst and Belgravia Square, "Appellees"). After satisfying the debt owed to MidFirst, surplus proceeds in the amount of $54,793.32 remain to be distributed. MidFirst alleged that Ms. Cole was a potential claimant to the surplus funds, along with Defendant TruEquity, LLC ("TruEquity"), by virtue of an assignment of interest apparently executed by Ms. Cole. MidFirst further alleged that Defendant/Appellant Derrick Whitsy, Jr. ("Appellant") might have a claim to the proceeds by virtue of a "Certificate of Acknowledgment" dated July 13, 2021. MidFirst therefore asked that it be permitted to deposit the surplus funds with the trial court for the court to determine the respective interests in the funds, less any reasonable attorney's fees and costs owed to MidFirst.

Appellant filed an answer on December 10, 2021, asking that the foreclosure sale be set aside because MidFirst did not have the legal and equitable right to sell the Property. Instead, Appellant alleged that he held an equitable interest in the property by virtue of a Certificate of Acknowledgement, as well as the fact that the Property was unclaimed under Tennessee law. Appellant further alleged that MidFirst defrauded him by proceeding with the foreclosure and sale despite his ownership interest in the Property. Appellant asked that he be awarded "[f]ull and unencumbered ownership rights to the Property" and damages for MidFirst's fraud. Appellant also asked that MidFirst be fined for its violation of state and federal law.

---

[2] As this matter was disposed of via a motion to dismiss, the facts are taken from the parties' complaints.

Appellant filed a countercomplaint against MidFirst on March 16, 2022, and an amended countercomplaint on May 24, 2022. The amended countercomplaint named Belgravia Square and RA Oak Line in addition to the previously named parties. Appellant argued that he was the owner of the Property due to the Certificate of Acknowledgement, state, and federal law, and that MidFirst acted fraudulently in foreclosing the property despite having knowledge of his interest therein. Appellant sought a writ of possession as to the Property, an injunction against future efforts to impede his rights to the Property, an order that MidFirst pay back the monies paid by the purchaser of the Property, damages of fifty percent of the "sold value of the home" due to MidFirst's violation of state law, and damages of fifty percent of the "sold value of the home" due to MidFirst's violation of federal law.

On June 1, 2022, MidFirst filed a motion to dismiss the amended countercomplaint for failure to state a claim upon which relief could be granted and failure to plead fraud with particularity. In the brief accompanying the motion to dismiss, MidFirst argued that Appellant's claim to an interest in the property had "no basis in law or fact." Instead, MidFirst asserted that Appellant's only document in support of his claimed interest in the property was a Certificate of Acknowledgment that was created by Appellant in an attempt to claim the Property.[3] MidFirst further argued that the statutes cited by Appellant applied only to property held by governmental entities.[4] Even to the extent that Appellant was correct that he had an interest in the property, MidFirst argued that its interest was superior to Appellant's, as it was based on a deed of trust recorded in 2005, rather than the interest Appellant asserted was created in 2021. MidFirst further argued that any claims of fraud were not pleaded with particularity,[5] and that whatever interest Appellant had was "foreclosed out by MidFirst."

Appellant filed a detailed response in opposition on June 9, 2022. Therein, Appellant described MidFirst's claim that his interest in the Property was not supported by fact or law as "absolutely preposterous." With regard to MidFirst's argument that the statutes cited as support for his claim only applied to government-held property, Appellant asserted that the government did hold the "Deed Instrument over this Property[,]" i.e., that the government held the deed document in the register's office. Appellant further asserted

---

[3] The Certificate of Acknowledgment was attached as an exhibit to MidFirst's brief. As far as the record on appeal reveals, this was the first time that the Certificate of Acknowledgment was placed into the record. The Certificate of Acknowledgement attached to MidFirst's brief is signed only by Appellant and a notary public; the document does not bear Ms. Cole's signature.

[4] For example, Appellant cited Tennessee Code Annotated section 66-29-105(a)(10), which provides that property may be "presumed to be abandoned if it unclaimed by the apparent owner . . . one (1) year after the property becomes distributable[.]" Subsection (a)(10), however, only applies to "[p]roperty held by a government or governmental subdivision, agency, or instrumentality[.]" Tenn. Code Ann. § 66-29-105(a)(10).

[5] Rule 9.02 of the Tennessee Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

that his claims had all been pleaded with particularity.

On June 13, 2022, TruEquity, as the assignee of Ms. Cole, filed a motion to disburse the funds held by the trial court and to dismiss Appellant's claims. Therein, TruEquity alleged that Ms. Cole was the sole owner of the Property prior to the foreclosure, that Ms. Cole had assigned to TruEquity the right to seek payment of the surplus funds,[6] and that Appellant's claim to the Property was "without any basis in fact and law." TruEquity therefore requested that Appellant's claim be dismissed and that the funds held by the Clerk and Master be released to "Tamika Cole c/o TruEquity[.]" Again, Appellant filed a detailed response in opposition to TruEquity's motion on June 27, 2022. Belgravia Square and RA Oak Line filed a motion to dismiss Appellant's amended countercomplaint on July 6, 2022, arguing that the countercomplaint failed to state a claim against them. Therein, Belgravia Square and RA Oak Line noted that Appellant had previously filed an action against the Shelby County Register of Deeds and Pat Walker seeking possession of the Property. None of the current parties, however, were named as defendants in that action, and it was dismissed with prejudice on June 21, 2022. As such, Belgravia Square and RA Oak Line asserted that Appellant's claims were barred by the doctrine of res judicata. Appellant filed a response in opposition on July 19, 2022. On August 26, 2022, Appellant filed a motion for the trial court to grant him injunctive relief and for the other parties' motions to dismiss to be denied.

On February 22, 2023, the trial court entered an order dismissing the claims of Appellant and distributing the surplus funds by agreement of the remaining parties. Therein, the trial court ruled as follows:

> 11. [Appellant] claims that Cole had abandoned her interest in the property and that he obtained an interest through a filing a document with the Register of Deeds. This position is rejected, as Cole properly acquired her property interest and maintained it until foreclosure. [Appellant's] filing did not convey a property interest to himself and would not have eliminated or superseded [Ms.] Cole's interest if it had.
> 12. [Appellant] claims that MidFirst violated state and federal laws by conducting a foreclosure sale without the right to do so and through an inferior claim of interest to [Appellant]. This argument is incorrect, as MidFirst's right to foreclosure was created by a default on the Deed of Trust with [Ms.] Cole dated in 2005. [Appellant's] filing occurred in 2021 and would not impact MidFirst's position with regard to this property, even if it were legitimate.
> 13. [Appellant] claims that Counter Defendant RA Oak Line [] is not the legal and equitable owner of the property and RA Oak Line [] and Belgravia

---

[6] The assignment of interest agreement between Ms. Cole and TruEquity was attached as an exhibit to the motion. The details of Ms. Cole's contract with TruEquity is not relevant to this appeal.

Square [] participated in a fraudulent transaction against himself. This claim is rejected, as Belgravia Square [] legally purchased the property at a foreclosure sale, which was conducted in accordance with the law, and conveyed the property to RA Oak Line [] as is its right to do so. There was no fraudulent behavior shown or plead with particularity by any party involved in the foreclosure sale.

14. [Appellant] claims that MidFirst, along with its attorneys, violated Tenn. Code Ann. § 66-3-104[7] by selling the property to which he had a claim. This position is incorrect, as [Appellant] did not have a valid claim to the property and only received notice of the upcoming foreclosure sale due to his filing, which did not impact the interests in the property.

15. [Appellant] claims that MidFirst, along with its attorneys, violated 18 U.S.C. § 241[8] by conspiring to proceed with the foreclosure sale after receiving notice that [Appellant] wanted to prevent the sale from occurring or rescind the sale as the successor trustee. This argument is irrelevant, as there was no conspiracy to oppress the exercise or enjoyment of any right of [Appellant] and [Appellant] was not the successor trustee, whom the notices state is the party that had the right to rescind the sale.

16. In his filing of July 19, 2022, [Appellant] claims that MidFirst violated principles of equity and that equity would benefit his position. This argument is rejected, as there has been no finding of bad faith in this foreclosure and the facts asserted in this document against MidFirst and presented as to dealings with [Ms.] Cole are not supported by any evidence in the record. Further, [Appellant's] belief that he acquired a legitimate interest in the property to somehow make the principles of equity he referenced applicable is incorrect.

(Record citations omitted). The trial court therefore dismissed all the claims raised by Appellant, awarded MidFirst its attorney's fees and costs, and ordered that the remaining funds would be disbursed to "Wyer Law c/o Tamika L. Cole." Appellant thereafter appealed to this Court.

## II. ANALYSIS

Appellant raises twenty issues in this appeal, many of which assert that the trial court erred in ruling that he held no interest in the Property. In response to Appellant's brief, MidFirst asserts that this appeal should be dismissed for failing to comply with the

---

[7] Tennessee Code Annotated section 66-3-104(a) makes it a crime for a person to transfer land by general warranty deed with the knowledge of outstanding liens, mortgages, deeds of trust, or other claims to the property with the intent to defraud.

[8] 18 U.S.C. section 241 makes it a crime for two or more persons to "conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States[.]"

mandatory requirements of Rule 27(a) of the Tennessee Rules of Appellate Procedure.

Rule 27(a) provides that the brief of the appellant shall contain:

(1) A table of contents, with references to the pages in the brief;
(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
(3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;
(4) A statement of the issues presented for review;
(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;
(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;
(7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);
(8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27. We have previously held on numerous occasions that failure to substantially comply with Rule 27 constitutes a waiver of the issues an appellant raises on appeal and, consequently, is grounds for affirming a trial court's judgment. *See, e.g.*, ***Breeden v. Garland***, No. E2020-00629-COA-R3-CV, 2020 WL 6285300, at *1 (Tenn. Ct. App. Oct. 27, 2020) ("The appellant's brief significantly fails to comply with Tennessee Rule of Appellate Procedure 27. Accordingly, we find that any issues on appeal are waived . . . .").

Rule 6 of the Rules of the Court of Appeals of Tennessee is also relevant here. It provides, in relevant part, as follows:

**(a)** Written argument in regard to each issue on appeal shall contain:
(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation

to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

**(b)** No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. Ct. App. R. 6. The failure to draft an argument using relevant legal authority and to make appropriate references to the appellate record is a particularly fatal deficiency that often leads to waiver. *See, e.g.*, **Bean v. Bean**, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

In this case, Appellant's brief fails to substantially comply with the rules of this Court.[9] For one, neither Appellant's statement of the facts nor his argument section contains any proper references to the appellate record. Instead, the only record references in the statement of facts section of Appellants' brief are vague directions to a page and paragraph number of some filing in the trial court proceedings, e.g., "(Pg. 2, Para. 1)." Appellant does not specifically indicate what document he is quoting or where that document can be found in the record on appeal. "'[J]udges are not like pigs, hunting for truffles' that may be buried in the record[.]" *Cartwright v. Jackson Cap. Partners, Ltd. P'ship*, 478 S.W.3d 596, 616 (Tenn. Ct. App. 2015) (quoting *Flowers v. Bd. of Prof. Resp.*, 314 S.W.3d 882, 899 n.35 (Tenn. 2010)). It is therefore not our responsibility to hunt through the record to find the document or documents that Appellant is referring to in order to evaluate his arguments.

Appellant makes even fewer citations to the appellate record in his argument section. Specifically, Appellant cites to "Clauses 52-57 of Section 8 of his filed 'Response in Support of Amended Counter Complaint . . . .'" Appellant also references some of the pleadings that he filed in the trial court by their names. But again, Appellant does not state

---

[9] Appellant attempts to address some of the deficiencies in his initial brief in his reply brief. Reply briefs, however, usually cannot be used to correct the deficiencies in initial briefs. *See Augustin v. Bradley Cnty. Sheriff's Off.*, 598 S.W.3d 220, 227 (Tenn. Ct. App. 2019).

where these documents are located in the appellate record. Clearly, Appellant has failed to substantially comply with Rule 27(a) and Rule 6(a) by failing to support his assertions and arguments with proper record citations.

Appellant also largely fails to support his arguments with relevant legal authority. Citation to relevant authority is an integral part of argument to this Court; in the absence of citation to legal authority to explain how the trial court erred, we will consider an argument merely skeletal and waived. *See **Sneed v. Bd. of Pro. Resp. of Sup. Ct.**,* 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). As an initial matter, while Appellant's brief contains a table of authorities section, the table does not include "references to the pages in the brief where they are cited[.]" Tenn. R. App. P. 27(a)(2). Of the two binding Tennessee authorities cited, Appellant only cites them vaguely: "Tennessee Code Annotated, Title 47. Commercial Instrument and Transactions"; "Tennessee Code Annotated, Title 66. Property[.]" Appellant's references to non-Tennessee and secondary authorities contain no additional detail. Indeed, one citation is simply to "United States Code" with no additional detail. Clearly this practice does not comply with either the letter or the spirit of Rule 27(a)(2).[10]

The argument section of Appellant's initial brief is little better. For the most part, Appellant uses his argument section to point out what arguments he made in the trial court. For example, Appellant asserts that "[u]sing Contract Law, and the Deed of Trust as the evidence example [Appellant] highlighted the fact that both the Title/Deed and Deed of Trust instruments, were Unilateral Contracts[.]" Appellant does not, however, cite any Tennessee contract law of any kind in conjunction with the statement, much less on the topic of unilateral contracts.

After reviewing Appellant's argument, we count only a few instances where Appellant cites binding Tennessee authority for his arguments in this section of his brief. Once, Appellant cites Tennessee Code Annotated section 66-29-105(a)(1), stating that Appellant "evidenced to the Court exactly how [Ms.] Cole failed to follow the Law and Claim the Deed instrument on Record as required by TCA 66-29-105(a)(10)." Contemporaneously with this citation, however, Appellant does not explain how subsection (a)(10) applies here when it expressly relates only to "[p]roperty held by a government or government subdivision, agency, or instrumentality[.]" Tenn. Code Ann. § 66-29-105(a)(10). Appellant later refers again to section 66-29-105, but does not specify which of the fourteen subsections he is citing. Appellant next cites Tennessee Code

---

[10] Appellant does include an index in his brief that provides page numbers for a multitude of words used by Appellant. Although some of the legal authorities Appellant cites are included in the index, the index is replete with references to other terms. The purpose of the table of authorities is to provide a list of authorities and where in the brief they are cited in order to facilitate efficient appellate review. Appellant's index does not further this goal.

Annotated section 47-9-102(65), which merely defines the term "[p]romissory note." Likewise. Appellant cites to the term "[o]wner" under Tennessee Code Annotated section 66-29-102(21). But Appellant does not explain how these definitions entitle him to reversal of the trial court's ruling in any respect. An argument that is more than skeletal is one that not only cites legal authority but also explains "how the cited legal principles apply to the facts in this case." ***Tennesseans for Sensible Election Laws v. Slatery***, No. M2020-01292-COA-R3-CV, 2021 WL 4621249, at *6 (Tenn. Ct. App. Oct. 7, 2021) (describing the explanation as "necessary"), *perm. app. denied* (Tenn. Mar. 24, 2022).

Aside from these minimal citations to Tennessee authority in his argument section, Appellant makes a handful of other citations to both Tennessee and non-Tennessee authority in other sections of his brief. For example, in his statement of facts, Appellant cites what he asserts are several equitable maxims that entitle him to relief. As an initial matter, this Court has held that it is improper to "interlace and intertwine" a party's argument with the fact section of his or her brief. *See **Freiden v. Alabaster***, No. 37, 1990 WL 14562, at *1 (Tenn. Ct. App. Feb. 21, 1990) (holding that this practice "is in contravention to both the letter and the spirit of the provisions of [Rule 27]"); *see also **Coleman v. Coleman***, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *7 (Tenn. Ct. App. Feb. 4, 2015) (noting that the appellant "combined her argument and facts sections in violation of Rule 27"). Moreover, Appellant does not state the genesis of these maxims or demonstrate that they are consistent with Tennessee law. In his argument section, Appellant merely refers to his citation of these "equity maxims" but does not repeat or elaborate on those arguments.[11]

Following the conclusion of his brief, Appellant also includes what amounts to an appendix of authorities, citing to a multitude of Tennessee, federal, and secondary sources.[12] Again, however, Appellant does not tie these authorities to the facts of this case or explain how the authorities support a determination that the trial court erred in dismissing his claims against Appellees. *See **Tennesseans for Sensible Election Laws***, 2021 WL 4621249, at *6. Respectfully, appending a list of authorities to a brief without any explanation of how they relate to the case or how they support reversal of the trial court's judgment does not meet the requirements of this Court.

In sum, Appellant failed to craft an argument supported by references to the appellate record and appropriate citations to relevant authorities in violation of Rule 27(a) and Rule 6(a). These failures result in the waiver of Appellant's arguments on appeal. *See **Bean***, 40 S.W.3d at 54–55 ("[T]he Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the

---

[11] By way of example, Appellant asserts in his brief that "explained these Violations [i.e., allegations of fraud] in great detail in his filed 'Deed of Trust and Equity Maxim Violations,' and 'Brief in Support of Motion to Grant Injunctive Relief.'"

[12] Appellant cites to at least one of those secondary sources, *Gibson's Suits in Chancery*, in the facts section of his brief.

rules of this Court."). It is true that that Appellant is proceeding pro se in this appeal, as he did in the proceedings in the trial court. "While entitled to fair and equal treatment before the courts, a pro se litigant is still required to comply with substantive and procedural law as do parties represented by counsel." *Gilliam v. Gilliam*, No. M2007-02507-COA-R3-CV, 2008 WL 4922512, at *3 (Tenn. Ct. App. Nov. 13, 2008) (citing *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). As explained by this Court, "[t]he courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer*, 138 S.W.3d at 903 (internal citations omitted)). "[T]he courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer*, 138 S.W.3d at 903. As such, even "[i]n considering appeals from pro se litigants, the court cannot write the litigants' briefs for them, create arguments, or 'dig through the record in an attempt to discover arguments or issues that [they] may have made had they been represented by counsel.'" *Cannistra v. Brown*, No. M2021-00833-COA-R3-CV, 2022 WL 4461772, at *4 (Tenn. Ct. App. Sept. 26, 2022) (quoting *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014)). As a result, Appellant's waiver is not excused by his decision to represent himself in this appeal. Based on Appellant's waiver, the trial court's decision to dismiss his claims is affirmed. All other issues are pretermitted.

### III. CONCLUSION

The judgment of the Shelby County Chancery Court is affirmed, and this cause is remanded to the trial court for further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant Derrick Whitsy, Jr., for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 10 -